UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SNECMA,

                            Plaintiff,

           v.                                    6:07-CV-1354

TURBINE ENGINE COMPONENTS
TECHNOLOGIES CORPORATION,

                          Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                    OF COUNSEL:

SHEARMAN & STERLING, L.L.P.     MARK S. McNEILL, ESQ.
Attorneys for Plaintiff
114, avenue des Champs-Elysées
75008 Paris, France

BOND, SCHOENECK & KING, P.L.L.C.  LOUIS ORBACH, ESQ.
Attorneys for Plaintiff              SUZANNE M. MESSER, ESQ.
One Lincoln Center
Syracuse, New York 13202-1355

KIRKPATRICK LOCKHART PRESTON  DAVID S. VERSFELT, ESQ.
  GATES ELLIS L.L.P.            WARREN H. COLODNER, ESQ.
Attorneys for Defendant          CATHERINE R. KEENAN, ESQ.
599 Lexington Avenue
New York, New York 10020

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

      Plaintiff Snecma ("plaintiff" or "Snecma") brings this action for injunctive relief

against Turbine Engine Components Technologies Corporation ("defendant" or "TECT") and

moves, under Federal Rule of Civil Procedure 65, for a preliminary injunction enjoining TECT

from refusing to accept purchase orders for titanium-forged jet engine blades in accordance with the prices and conditions to which Snecma alleges the parties agreed.

### A. Facts

Snecma is a French company that designs, develops and produces, among other things, engines for civil and military aircraft.  TECT is a Georgia corporation that manufactures and supplies aircraft components and assemblies.  The parties have maintained a business relationship for the past twenty five years.  For the past five years, TECT has been Snecma's principal outside supplier of forging services for customized titanium jet engine blades, which Snecma installs in CFM56-7B ("7B") and CFM56-5B ("5B") jet engines.  Snecma then supplies 7B and 5B jet engines to Boeing and Airbus, respectively.[1]

Due to an increase in demand for jet engines from Boeing and Airbus, the parties met on July 20, 2006, to discuss the terms of a new long term agreement.  At the end of the meeting, representatives of the parties signed a short one page document titled "Minutes of Snecma/TECT meeting" ("July 2006 document").  (Levy Decl. Ex. 2.)  The July 2006 document provides that "[t]he parties commit to sign a 6 year long term agreement under the following conditions," and then sets forth a table with price and market share figures for 7B and 5B blade forging services.  Id.  The price for 7B blades is listed at a value-added price of $580 per unit, gradually decreasing to $535.50 by 2012; the price for 5B blades is listed at a flat rate of $503 per unit.  TECT was to receive a minimum market share of eighty percent

---

[1]  To be precise, TECT does not ship the blades directly to Snecma after forging; rather, it ships them elsewhere for "finishing."  The 7B blades are finished by GKN/Teleflex ("GKN"), an Ohio company, and the 5B blades are finished by Aerospace Industrial Development Corporation ("AIDC"), a Taiwanese company.  GKN and AIDC then ship the finished blades to Snecma for installation into the 7B and 5B jet engines and delivery to Boeing and Airbus.

for the 7B blades and fifty percent for the 5B blades.  Also, the July 2006 document provides that "Snecma have no intention to open a new source."  Id.  Underneath the signature of TECT representative Rob Cohen are the words "pending Board Approval."  Id.

In December 2006, Snecma, TECT, and GKN executed a memorandum of understanding defining the scope of each company's obligations with respect to forging and finishing the 7B blades.  (Levy Decl. Ex. 3.)  The December 2006 memorandum of understanding lists the price of 7B blades at a value-added price of $580 per unit, gradually decreasing to $535.50 by 2012.  The parties drafted, but never executed, a memorandum of understanding defining the scope of Snecma's, TECT's, and AIDC's obligations with respect to the 5B blades.

Concurrently, Snecma and TECT entered into a "side letter agreement" which adopted the price and market share terms in the July 2006 document and required that Snecma provide the raw titanium for the forging process.  The side letter agreement incorporates the contractual obligations defined in the "Long Term Agreement" (Levy Decl. Ex. 4 at 2), apparently referring to the December 2006 memorandum of understanding.

In September 2007, TECT wrote to AIDC that "[d]ue to the negative margin that [the 5B blade] has with current pricing and the lack of concession activity, TECT must change the price [from $503 to $590 per unit]."  (Levy Decl. Ex. 7.)  AIDC informed Snecma of TECT's communication and Snecma wrote to TECT that it was bound by the flat rate of $503 for six years.  TECT responded by citing the economic difficulties it faced at that price and indicated that at $503 per unit it would have to substantially reduce its weekly commitment from upwards of 300 blades to 200 blades.

The parties met twice in November 2007 in an effort to resolve the dispute. Snecma offered a modest price increase for the 5B blades but TECT rejected it.  In early December 2007, TECT indicated that it would stop accepting orders for both the 7B and 5B blades after December 21, 2007, unless Snecma paid $650 per unit for both types of blades.

### B.  Procedure

On December 28, 2007, Snecma filed this action for injunctive relief and requested an Order to Show Cause with a temporary restraining order ("TRO") enjoining TECT from refusing to accept purchase orders for the 7B and 5B blades in accordance with the prices and conditions set forth in the December 2006 memorandum of understanding and other agreements.

On December 31, 2007, a telephone conference was held with counsel for both parties.  Later that day, the requested Order to Show Cause with a TRO was issued and Snecma was directed to post an undertaking in the amount of $100,000, which it did on January 3, 2008.

Oral argument was held on January 11, 2008, in Utica, New York, regarding Snecma's motion for a preliminary injunction.  In an oral decision from the bench, (1) the TRO was extended until 5:00 p.m., January 25, 2008, (2) TECT was directed to deliver to Snecma 400 CFM56-7B engine blades per week and 200 CFM56-5B engine blades per week for the duration of the TRO, and (3) Snecma was directed to post an additional undertaking in the amount of $200,000, which it did on January 15, 2008.

Decision was reserved on Snecma's motion with a promise to issue a decision on January 25, 2008.  This is that decision.

## II.  DISCUSSION

A party seeking preliminary injunctive relief must demonstrate (1) irreparable harm in the absence of relief, and (2) either a likelihood of success on the merits, or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party seeking relief.  See Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 152-53 (2d Cir. 2007); Roso-Lino Beverage Distribs., Inc. v. Coco-Cola Bottling Co. of N.Y., Inc., 749 F.2d 124, 125 (2d Cir. 1984).

### A.  Irreparable Harm

Showing irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." Reuters Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 907 (2d Cir. 1990) (internal quotation marks omitted).  The alleged irreparable harm must be actual and imminent, as opposed to speculative and remote, and incapable of being remedied by monetary damages.  See id. (citing Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989)).

Snecma argues that it will suffer irreparable harm in the absence of a preliminary injunction because TECT will terminate its deliveries of 7B and 5B blades and Snecma will be unable to supply engines to Boeing and Airbus.  Snecma contends that if it is unable to supply engines to Boeing and Airbus, it will suffer millions of dollars in penalties and a monetarily incalculable loss of credibility and good will.

In support of its argument, Snecma relies on Reuters Ltd. v. United Press Int'l, Inc., 903 F.2d 904 (2d Cir. 1990), for the proposition that "'[T]erminating the delivery of a unique product to a distributor whose customers expect and rely on the distributor for a continuous supply of the product almost inevitably creates irreparable damage to the good will of the

distributor.'"  (Pl.'s Mem. 12 (quoting <u>Reuters</u>, 903 F.2d at 907-08) (alteration in original).)
While Snecma has misrepresented the preceding quotation as a direct assertion made by
the <u>Reuters</u> court, when in fact the court was restating the issue raised by the defendant-
appellant in that case,[2] the <u>Reuters</u> court ultimately accepted the position of the defendant-
appellant, acknowledging that "in cases where a preliminary injunction has issued to prevent
a product source from suspending delivery to a distributor, the irreparable harm has often
consisted of the loss of customers and the competitive disadvantage that resulted from a
distributor's inability to supply its customers with the terminated product."  <u>Id</u>. at 909.  The
<u>Reuters</u> court further held that speculative harm still may cause immediate irreparable harm
to the distributor's good will in such cases.  Thus, Snecma correctly points out that a
monetarily incalculable loss of credibility and good will arising from TECT's termination of
deliveries may very well constitute irreparable harm.

However, Snecma's reliance on <u>Reuters</u> is misguided.  In <u>Reuters</u>, the defendant-
appellant product source actually terminated its contract to supply the product to the plaintiff-
appellee distributor.  In this case, however, TECT has not terminated its delivery of the 7B
and 5B blades, or threatened unconditionally to do so.  Rather, TECT has simply demanded
a price higher than the one to which Snecma alleges the parties agreed.  Thus, Snecma can
avoid the alleged irreparable harm – loss of credibility and good will – by paying the higher
price, and then recover monetary damages on the merits in the proper forum, which appears

---

[2]  The entire quotation is "A key argument raised by UPI – one not discussed by the district court
– is that terminating the delivery of a unique product to a distributor whose customers expect and rely on
the distributor for a continuous supply of the product almost inevitably creates irreparable damage to the
good will of the distributor."  <u>Reuters</u>, 903 F.2d at 907-08.

to be the International Court of Arbitration.  In addition, it might also obtain permanent injunctive relief from either that court and/or in this action.

This rationale also applies to Snecma's argument that TECT has made additional demands related to the assumption of shipping costs and late-delivery penalties under threat of delivery termination.  Again, Snecma can avoid the alleged irreparable harm that would arise from a termination of deliveries by meeting those terms, and then seek monetary damages and/or obtain permanent injunctive relief in due course.

Moreover, Snecma's last-ditch effort to demonstrate irreparable harm by arguing that TECT seeks to lower the quality standards to which Snecma alleges the parties agreed, simply is not supported by sufficient evidence.

Finally, Snecma makes the common-sense argument that it is "utterly unjust to suggest . . . that Snecma should simply pay defendant's ransom, and bring an arbitral claim for damages later" because TECT abused its entrusted role as exclusive outside supplier and is free to increase the price again or make other demands.  (Pl.'s Mem. 16.)  Also, Snecma points out, to allow TECT to act in such a way could encourage other suppliers of unique components with which Snecma does business to commit similar breaches.  While Snecma has raised some troubling scenarios, it has failed to demonstrate irreparable harm in the absence of preliminary injunctive relief.

Therefore, Snecma's motion for a preliminary injunction will be denied.

### B.  Likelihood of Success on the Merits

Even if Snecma had demonstrated irreparable harm in the absence of preliminary injunctive relief, it has not demonstrated a likelihood of success on the merits related to the 5B blades.

To reiterate, the parties met on July 20, 2006, to discuss a new long term agreement and signed a document titled "Minutes of Snecma/TECT meeting." (Levy Decl. Ex. 2.)  However, it is unclear that the July 20 document constitutes a contract.  In fact, several factors militate against finding that it constitutes a contract.  <u>First</u>, underneath the signature of TECT representative Rob Cohen are the words "pending Board Approval," indicating that while the parties may have seriously considered the terms outlined in that document, they did not intend for it to represent a final agreement.  <u>Second</u>, the July 2006 document provides that "[t]he parties commit to sign a 6 year long term agreement," indicating that it was a preliminary "agreement to agree," not a final agreement between the parties.  <u>Third</u>, in December 2006, the parties executed a memorandum of understanding adopting the terms outlined in the July 2006 document with respect to the 7B blades, but not the 5B blades.  The parties drafted a memorandum of understanding with respect to the 5B blades, but never executed it.

Moreover, the side letter agreement clearly anticipates the parties reaching a long term agreement.  While it appears the parties reached such an agreement with respect to the 7B blades, they did not reach an agreement with respect to the 5B blades.  Thus, it cannot be said that the side letter agreement itself defines the scope of the parties' obligations with respect to the 5B blades.

Therefore, while Snecma could succeed in arbitration on the merits related to the 5B blades, it has not demonstrated a likelihood of success at this stage to warrant the granting of a preliminary injunction.

**C.  Balance of Hardships**

Assuming, again, that Snecma demonstrated irreparable harm in the absence of preliminary injunctive relief, it has not demonstrated a balance of hardships tipping decidedly in its favor.

In the absence of preliminary injunctive relief, Snecma would be required to pay prices and abide by additional terms which are different from those to which the parties allegedly agreed.  However, any hardships arising therefrom would be purely financial and relatively easy for Snecma to absorb.  TECT has produced evidence that it also would incur financial hardship in the event that it was compelled to sell the 5B blades at $503 per unit.  Of course, both parties can avoid financial hardship and a possible deterioration of their long-standing and mutually beneficial business relationship if they can quickly arrive at a settlement of the current disputes.

In any event, Snecma has not demonstrated a balance of hardships tipping decidedly in its favor.

**III.  CONCLUSION**

In sum, Snecma is not entitled to preliminary injunctive relief because it has not demonstrated irreparable harm in the absence of such relief.  Even if Snecma had demonstrated irreparable harm, it has not demonstrated a likelihood of success on the merits related to the 5B blades, nor has it demonstrated a balance of hardships tipping decidedly in its favor.

Accordingly, it is

ORDERED that

1.  Snecma's motion for a preliminary injunction is DENIED; and

2.  The TRO is VACATED.

IT IS SO ORDERED.

_____
United States District Judge

Dated:   January 25, 2008
         Utica, New York